## McKinstry *v.* McKinstry, Appellant.

*Divorce—Cruel and barbarous treatment—Evidence—Sufficiency.*

A libel in divorce is properly refused, where the evidence fails to prove such cruel and barbarous treatment as is contemplated within the statute.

Where the testimony of the libellant is contradicted by the respondent, and refuted by the correspondence between the parties, the libel is properly dismissed.

Argued April 28, 1926. Appeal No. 148, April T., 1926, by respondent, from decree of C. P. Allegheny County, April T., 1925, No. 2718, in the case of Guy Hale McKinstry v. Marie Eloise McKinstry. Before PORTER, P. J., HENDERSON, TREXLER, KELLER, LINN, GAWTHROP and CUNNINGHAM, JJ. Reversed.

Libel in divorce. Before EVANS, J.

The facts are stated in the opinion of the Superior Court.

The case as referred to Charles M. Christler, Esq., as Master, who recommended that a divorce be granted. Subsequently the court, on exceptions to the Master's Report dismissed the exceptions and granted a divorce. Respondent appealed.

*Error assigned,* among others, was the decree of the Court.

*James H. Gray,* for appellant.

*Francis R. Harbison,* and with him *Francis A. Wolfe* and *Watson & Freeman* for appellee.

OPINION BY TREXLER, J., July 8, 1926:

This is a suit in divorce, the grounds being cruel and barbarous treatment and indignities to libellant's person. The parties were married in 1911 and lived at various places. The evidence that the libellant submits extends back over a period of ten years and up to May 1st, 1923, when the parties separated.

The libellant is a medical doctor and the respondent had some training as a nurse. The testimony is quite voluminous. The wife was of a nervous temperament and at times almost hysterical and had high blood pressure. One of the charges is that his wife was continually nagging him. It seems that both were ambitious to have the doctor get along and after reading the testimony carefully, we have come to the conclusion that what the libellant calls "nagging," largely consisted of her urging her husband to practice economy and to greater efforts in the line of his profession. She remonstrated with him when he came to the office late in the morning; she took a great interest in his work; she objected to his going to Pittsburgh and thus neglecting his work in Atlasburg where he was a mill physician. There was nothing in these remonstrances which she made that would give grounds for a divorce. She objected to his intimate contact with nurses, but he seems to have treated her jealousy in a way that added fuel to the flame. He admits that he did not always tell her the truth and we, therefore, think she had some ground for suspicion, although in justice to him, it may be said there is no evidence of anything wrong.

His mother seems to have been one of the causes of

the differences which existed between these parties. They lived together in a sanitarium for a while and it is very evident that the relations between the libellant and his mother were not of the pleasantest and there was an incompatibility between the two women which flared up every now and then. There is also evidence that the libellant and his mother were not always in accord.

Respondent was suspicious of her husband and on one occasion suspected him of performing an unlawful operation. We cannot say that the circumstances surrounding this act were not such as would naturally excite the suspicion of a wife although there may have been no wrong done. There are two instances of personal violence. The one the wife denies in toto and the other she justifies by telling in detail how her husband had grabbed her and how in warding him off, she accidently scratched his nose. The narration of this event by the wife impresses us as true.

It is very evident that these people were often unhappy, but there was also evidence that at many times their life was normal and they mingled with friends and went to dancing school and in many respects enjoyed themselves and had an affection for each other.

After they separated, there is evidence that upon at least two occasions they met at her initiative and resumed marital relations. As we stated before there is no evidence of unfaithfulness on his part or facts actually justifying her lack of confidence in him so far as his relation with other women is concerned, still his method of meeting the question was such as was not entirely ingenuous and some of his acts provoked suspicion. She flatly contradicts him as to many instances to which he testifies.

If we were in doubt as to which side the testimony leaned, the doubt would be resolved against him by reason of the letters which he wrote. In a letter, post-

marked, July 12, 1923, he addressed her as "Dear Marie." This was after a visit which she paid to him, "You visited me on Sunday to find out the big reason why we should not go on as before. Marie the reason is all in myself. We scrapped so much of late that I got tired of it, and I guess my affection for you must have grown cold. Perhaps this sounds brutal, but that is the big reason and if I told you to go it was to have some peace. Strange as it may seem, but perhaps it is some of that mean streak, that I get from my unforgivable father. I have no complaints as to your general cooperation. Our marriage or conjugal relations couldn't have been more pleasant."

In a letter dated, July 17, 1923, following a meeting which they had on Sunday night, he states, "Seemingly there must be a screw loose in my make up. You surely have been fair, decent and right in giving me another chance. On the tip of my tongue is the sentence "Come back Marie now"—a hundred times since I saw you and while with you but some how I cannot say it. Tell me Marie, what's wrong."

In a letter dated, November 24, 1924, he is sending her some money and a statement of the amounts which he has paid her, "I feel that it would be much better for each to be free to go their own way and suggest you enter suit for divorce soon. You may use any course you choose, cruel and barbarous treatment, gross neglect—or anything you wish. I would want your attorney to smother any publicity, a thing to be desired by you too," and there is more of the same kind.

These letters admit of one of two conclusions. Either the statements are true or he was so anxious to get rid of his wife that he was willing to admit anything and even go to the length of advising her to seek a divorce in support of which she was to swear to a charge of cruel and barbarous treatment which had no foundation in fact. In either view, his letters would

tend to discredit his testimony. Further comment is unnecessary.

The decree of the lower court granting the divorce is reversed and the libel is dismissed, the appellee to pay the costs.